UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RALPH ISENHART, | CASE NO. 1:16CV1792 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| NANCY A. BERRYHILL[1], ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

Plaintiff Ralph Isenhart ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying his application for Supplemental Security Income ("SSI"). ECF Dkt. #1. In his brief on the merits, filed on November 21, 2016, Plaintiff asks the Court to review whether the administrative law judge ("ALJ"): (1) violated the treating physician rule; and (2) erred in the determination that he did not meet Listing 12.05C. ECF Dkt. #14 at 9-14. On January 20, 2017, Defendant filed a response brief. ECF Dkt. #16. Plaintiff did not file a reply brief.

For the following reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

---

[1] On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

## I. PROCEDURAL HISTORY

Plaintiff filed his application for SSI in August 2011. ECF Dkt. #10 ("Tr.") at 363.[2] In his application, Plaintiff alleged disability beginning on February 1, 2011. *Id.* This claim was denied initially in May 2013 after the ALJ held hearings in November 2012 and December 2012. *Id.* at 80, 133, 200. Plaintiff requested review of the decision by the Appeals Council, and in September 2014, the Appeals Council remanded the application to the ALJ for further administrative proceedings. *Id.* at 220. In March 2015, Plaintiff appeared for a hearing before the ALJ. *Id.* at 44. On April 30, 2015, the ALJ denied Plaintiff's application for SSI. *Id.* at 20. Subsequently, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. *Id.* at 1. Accordingly, the decision issued by the ALJ on April 30, 2015, stands as the final decision.

On July 14, 2016, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. Plaintiff filed a brief on the merits on November 21, 2016. ECF Dkt. #14. Defendant filed a response brief on January 20, 2017. ECF Dkt. #16. Plaintiff did not file a reply brief.

## II. SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

In the decision issued on April 30, 2015, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 10, 2011, the date of his application for SSI. Tr. at 25. Continuing, the ALJ determined that Plaintiff had the following severe impairments: coronary artery disease; asthma; hypertension; depression; and borderline intellectual functioning. *Id.* The ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* When making this determination, and when addressing Listing 12.05, the

---

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed as a .PDF, rather that the page numbers assigned by the CM/ECF system. When the Transcript was filed the .PDF included an index, with the indexed pages differentiated from the numerical pages. Accordingly, the page number assigned in the .PDF mirrors the page number printed on each page of the Transcript, rather than the page number assigned when the Transcript was filed in the CM/ECF system.

ALJ discussed Plaintiff's: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.[3] *Id.* at 26-27.

The ALJ found that Plaintiff had mild restriction in his activities of daily living. Tr. at 26. Continuing, the ALJ stated that a function report completed in September 2011 indicated that Plaintiff reported that he cared for his personal needs, prepared simple meals, did laundry or chores, and performed his own shopping. *Id.* The ALJ next noted that at the hearing held in December 2012, Plaintiff stated that he cooked in a crock-pot, kept his house clean, and watched television. *Id.* Additionally, the ALJ indicated that Plaintiff reported that he performed his own grocery shopping at the March 2015 hearing. *Id.*

Regarding social functioning, the ALJ determined that Plaintiff had moderate difficulties. Tr. at 26. The ALJ noted that Plaintiff testified that a friend took him to the hearing held in March 2015, and that a friend found him a job at a big-box store. *Id.* Continuing, the ALJ stated that Plaintiff also testified that he visited his son, daughter-in-law, niece, and nephew, and indicated in the functional report that he enjoyed playing with his grandchildren. *Id.* The ALJ also noted that Plaintiff testified that he did not like being around others and that he went grocery shopping at night when there are fewer people at the grocery store. *Id.* Additionally, the ALJ indicated that a consultative examiner, Deborah Koricke, Ph.D., noted that Plaintiff demonstrated difficulty relating to others at the examination, and stated that he was somewhat depressed and difficult to engage because he put forth minimal effort. Id.

Moving on to concentration, persistence, or pace, the ALJ found that Plaintiff had moderate difficulties. Tr. at 27. The ALJ cited another consultative examiner, Andrea Johnson, Psy.D., who concluded that Plaintiff's ability to maintain attention, concentration, persistence, and/or pace was moderately impaired. *Id.* Continuing, the ALJ stated that Dr. Johnson felt that Plaintiff's ability to withstand stress and the pressures associated with day-to-day work activity was moderately impaired. *Id.* The ALJ also indicated that Dr. Koricke noted that Plaintiff's

---

[3]The ALJ also discussed Listing 12.04, however, there is no need to address Listing 12.04 herein as the only listing Plaintiff takes issue with is Listing 12.05C.

level of attention and concentration throughout the examination was adequate, but he put forth minimal effort and refused to persist. *Id.* Additionally, the ALJ indicated that Dr. Koricke stated that Plaintiff's work pace was within normal limits. *Id.* The ALJ also found that Plaintiff did not experience any episodes of decompensation of extended duration. *Id.*

Continuing, the ALJ determined that Plaintiff did not have a mental incapacity evidenced by dependence upon others for his personal needs, as he was able to care for himself and follow directions (as evidenced by his ability to take standardized tests). Tr. at 27. Further, the ALJ stated that Plaintiff did not have a "valid verbal, performance, or full-scale IQ of sixty through seventy and a physical or other mental impairment imposing an additional and significant work-related limitation of a function." *Id.* at 28. For these reasons, that ALJ found that Plaintiff did not meet the criteria of Listing 12.05C.

After consideration of the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), except that he could: never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally crawl; frequently kneel and crouch; and constantly balance or stoop. Tr. at 28. The ALJ also found that Plaintiff must avoid jobs that involved concentrated exposure to extreme cold, heat, humidity, and/or respiratory irritants. *Id.* Continuing, the ALJ stated that Plaintiff was limited to unskilled work where he could understand, remember, and carry out instructions, and work in a simple routine-type work environment without strict time or fast paced performance demands (noting that goal-oriented type work was acceptable). *Id.* The ALJ also found that Plaintiff could frequently work with others on a superficial basis, defined as speaking or signaling to take instructions, carry out instructions, ask questions, and serve. *Id.* In addition, the ALJ noted that Plaintiff could not collaborate with, mentor, or be responsible for the safety of others. *Id.*

After explaining the RFC finding, the ALJ stated that Plaintiff was unable to perform any past relevant work. Tr. at 33. The ALJ indicated that Plaintiff was a younger individual on the date the application was filed, and subsequently changed age category to closely approaching advanced age. *Id.* at 34. Continuing, the ALJ stated that Plaintiff had a marginal education, was able to communicate in English, and that the transferability of job skills was not an issue because

Plaintiff's past relevant work was unskilled. *Id.* Considering Plaintiff's age, education, work experience, and RFC, that ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* For these reasons, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, since August 10, 2011, the date his application for SSI was filed. *Id.* at 35.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g).

Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra* (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)) (internal citations omitted).

## V.    ANALYSIS

### A.    Treating Physician Rule

Plaintiff first asserts that the ALJ violated the treating physician rule and erred in the determination of Plaintiff's RFC. ECF Dkt. #14 at 9-12. An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, he or she must provide "good reasons" for doing so. Social Security Rule ("SSR") 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when

-6-

he knows that his treating physician has deemed him disabled and he may therefore "be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he or she rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543, 551 (6th Cir. 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, 413 Fed.Appx. 856, 864 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

Specifically, Plaintiff asserts that the ALJ failed to offer good reasons for the decision to discount the opinions of his treating physician, Nadim Al-Mubarak, M.D.[4] ECF Dkt. #14 at 10. Plaintiff recognizes that Dr. Al-Mubarak's opinions stating that he was disabled due to his cardiac condition were not binding on the Social Security Administration, but avers that the ALJ was still required to consider Dr. Al-Mubarak's opinions. *Id.* Continuing, Plaintiff claims that the ALJ failed to cite any evidence to support the conclusion that Dr. Al-Mubarak's opinions were "inconsistent with the overall evidence of the record, including his treatment notes, which indicate that [Plaintiff] is stable from a cardiac standpoint." *Id.* at 10-11 (citing Tr. at 33). According to Plaintiff, the exhibit cited by the ALJ was merely a letter that set forth the reasons Dr. Al-Mubarak believed that he was unable work. *Id.* at 11.

Next, Plaintiff argues that even assuming that the ALJ cited the wrong exhibit when discounting Dr. Al-Mubarak's opinions, the decision was still improper because this single letter, which the ALJ cited when stating that the evidence showed Plaintiff's cardiac condition was stable, was outweighed by the rest of the medical records. ECF Dkt. #14 at 11. Plaintiff contends that the record contains evidence of countless visits to the emergency room, multiple surgical procedures, and other various treatments and testing. *Id.* Further, Plaintiff argues that the ALJ erred in discounting Dr. Al-Mubarak's opinions in favor of the opinions submitted by the physicians from the Social Security Administration despite the relationship between Dr. Al-Mubarak and Plaintiff. *Id.* at 12.

Defendant asserts that the ALJ articulated "good reasons" for assigning less weight to the opinions of Dr. Al-Mubarak. ECF Dkt. #16 at 13. Continuing, Defendant states that the ALJ acknowledged Plaintiff's history of cardiac difficulties, but that the ALJ and Dr. Al-Mubarak also indicated that he had issues regarding compliance with his medication regimen. *Id.* Defendant also states that the ALJ observed that Plaintiff's condition remained stable with treatment. *Id.* at 14-15. Further, Defendant claims that the ALJ also considered how Dr. Al-Mubarak's opinions were inconsistent with the other medical opinion in the record, and correctly

---

[4]Plaintiff refers to Dr. Al-Mubarak as "Dr. El-Mubarak" throughout the majority of his brief. *See* ECF Dkt. #14.

recognized that the opinions submitted by the state agency reviewing physicians were consistent with the clinical findings. *Id.* at 16.

Plaintiff's arguments are without merit. The main argument put forth by Plaintiff is that the ALJ did not cite any evidence supporting the conclusion that Dr. Al-Mubarak's opinions were inconsistent with the overall evidence of the record, including Dr. Al-Mubarak's treatment notes. *See* ECF Dkt. #14 at 10. In the decision, the ALJ indicated that Dr. Al-Mubarak's treatment records noted that Plaintiff's angina was stable and that he was asymptomatic from a cardiac standpoint, citing several of Dr. Al-Mubarak's treatment notes. Tr. at 29 (citing Tr. at 1075, 1087, 1096). Further, the ALJ stated that Plaintiff underwent lower extremity Doppler testing performed by Dr. Al-Mubarak in December 2013, which showed normal results. *Id.* (citing Tr. at 1089).

When addressing the weight assigned to Dr. Al-Mubarak's opinions, the ALJ stated that the opinions were "inconsistent with the overall evidence of record, including [Dr. Al-Mubarak's] treatment notes, which indicate that [Plaintiff] is stable from a cardiac standpoint." Tr. at 33. While Plaintiff is correct is stating that the ALJ only cited to Exhibit 10F, a letter from Dr. Al-Mubarak opining that Plaintiff was unable to work, after making the above statement, the ALJ also expressly stated that she was considering Dr. Al-Mubarak's treatment notes when making this finding. *See id.* It is apparent from the decision that the ALJ was referencing back to Dr. Al-Mubarak's treatment notes that were discussed earlier in the decision. The ALJ was not required to reiterate Dr. Al-Mubarak's treatment notes in the paragraph addressing the weight assigned to Dr. Al-Mubarak's opinions, and Plaintiff cites no law or regulation imposing such a requirement.

Dr. Al-Mubarak's treatment notes are inconsistent with his opinions. For example, treatment notes from September 2011, January 2012, August 2012, February 2013, August 2013, December 2013, June 2014, and October 2014 indicate that Plaintiff denied chest pain or was doing fairly well from a cardiac point of view. Tr. at 786, 791, 1075-77, 1081, 1085, 1094. These treatment notes are inconsistent with Dr. Al-Mubarak's opinions indicating that Plaintiff was unable to perform work activities. Further, Dr. Al-Mubarak's opinions were submitted in

August 2011 and October 2011, prior to all but one of the treatment notes cited above. The fact that Dr. Al-Mubarak's treatment notes, prepared in the months and years after the opinions were submitted, reflected fairly mild cardiac impairments indicates that Dr. Al-Mubarak's opinions were not an entirely accurate representation of Plaintiff's impairments. For this same reason, the ALJ did not error when assigning more weight to the opinions submitted by the state agency reviewing physicians than the opinions submitted by Dr. Al-Mubarak. Since the ALJ provided "good reasons" for discounting the opinions of Dr. Al-Mubarak, namely that the opinions were inconsistent with the treatment notes, the ALJ did not violate the treating physician rule.

### B. Listing 12.05C

Plaintiff also asserts that the ALJ erred in determining that he did not meet requirements of Listing 12.05C despite an IQ score of 70 and significant physical impairments. ECF Dkt. #14 at 12. Continuing, Plaintiff cites 20 C.F.R. Part 404, Subpart P, Appendix 1, stating that Listing 12.05C required that he establish:

> A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Plaintiff argues that the reasons provided by the ALJ for finding that he did not meet Listing 12.05C are invalid.

When determining that Plaintiff did not meet the requirements of Listing 12.05C, the ALJ indicated that he: lived independently; held a driver's license; performed full-time work as a cut-off saw operator in 1996; was married three times; and, prior to age 22, worked as a helper to his father and painted windows. Tr. at 30. Additionally, the ALJ stated that Dr. Koricke indicated that Plaintiff did not appear to have an IQ of 70 and concluded that Plaintiff had low average to average intelligence, and that medical records from the Charak Center noted average intelligence. *Id.* (citing Tr. at 689, 1177).

20 C.F.R. Part 404, Subpart P, Appendix 1, reads, in relevant part:

-10-

> Intellectual disability refers to significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports the onset of impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
>> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Plaintiff has failed to establish an intellectual disability sufficient to satisfy Listing 12.05C. For the reasons set forth by the ALJ, Plaintiff is unable to show that he suffers from significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested prior to age twenty-two. "Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills." *West v. Comm'r of Soc. Sec.*, 240 Fed.Appx. 692, 698 (6th Cir. 2007). As stated by the ALJ, the evidence shows that Plaintiff had mild restrictions in his activities of daily living as he: cared for his personal needs; prepared simple meals; washed laundry and performed chores; performed his own shopping; kept the house clean; and watched television. Tr. at 26. Further, the ALJ indicated that Plaintiff had only moderate difficulties in social functioning, and that he: traveled to the March 2015 hearing with a friend; got his job at the big-box store through a friend; and spent time with his family. *Id.* Likewise, the ALJ found only moderate difficulties in regarding Plaintiff's concentration, persistence, or pace, citing the medical opinions of Dr. Johnson and Dr. Koricke. *Id.* at 27.

Beyond Plaintiff's activities of daily living, social functioning, and concentration, persistence, or pace, the ALJ also cited additional reasons for finding that Plaintiff did not meet Listing 12.05C, namely, as stated above, that Plaintiff: lived independently; held a driver's license; performed full-time work as a cut-off saw operator in 1996; was married three times; and, prior to age 22, worked as a helper to his father and painted windows. Tr. at 30. As the ALJ found that Plaintiff did not exhibit marked limitations in his activities of daily living, social functioning, and/or concentration, persistence, or pace, and also provided additional factors considered at this step of the decision, substantial evidence supports the ALJ's conclusion that

-11-

Plaintiff did not experience deficiencies in adaptive functioning that imposed significant work-related limitations. *See West*, 240 Fed.Appx. at 698.

Moreover, Plaintiff was diagnosed with borderline intellectual functioning, rather than an intellectual disability, which is probative for a Listing 12.05C determination. *See Peterson v. Comm'r of Soc. Sec.*, 552 Fed.Appx. 533, 539 (6th Cir. 2014).[5] Here, Plaintiff bears the burden of proving that his condition meets or equals Listing 12.05C. *See Foster v. Halter*, 279 F.3d 348, 357 (6th Cir 2001). Plaintiff has failed to meet his burden, and substantial evidence supports the ALJ's decision that Plaintiff did not qualify for benefits under Listing 12.05C.

## VI. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

Date: August 25, 2017         */s/George J. Limbert*
                              GEORGE J. LIMBERT
                              UNITED STATES MAGISTRATE JUDGE

---

[5] In *Peterson*, the Sixth Circuit stated that the absence of a diagnosis of mild mental retardation, and the presence of diagnoses of borderline intellectual functioning, was probative for a Listing 12.05C determination. 552 Fed.Appx. at 539. On August 1, 2013, Listing 12.05 was amended to replace the words "mental retardation" with "intellectual disability." *See* 78 F. Reg. 46,599, 46,501 (codified at 20 C.F.R. Part 404, Subpart P, Appendix 1). This amendment did not change the medical definition of the disorder. *Id.* at 46,500.